[No. 13211.   Department One.   December 5, 1916.]

MARGARET WATSON, *Appellant*, v. BENJAMIN F. WATSON
*et al., Respondents.*[1]

JURY—RIGHT TO JURY TRIAL—EQUITABLE ACTIONS.   An action to recover an interest in an estate as the widow of the deceased, in which the chief question at issue is that of marriage, is of equitable cognizance, within Rem. 1915 Code, § 315, in which there is no right to trial by jury, especially where one party demands an accounting and an injunction and the other a decree quieting title.

MARRIAGE—FINDINGS—REVIEW — CONCLUSIONS OF LAW.   Findings to the effect that a white man lived and cohabited with an Indian woman for years, without there having been any ceremonial marriage between them, that he was known as a "squaw man," that they kept their property and its increase separate, supports the conclusions of law that they were not married and that the woman had no community interest in the man's property.

Appeal from a judgment of the superior court for Kittitas county, Kauffman, J., entered August 16, 1915, upon findings in favor of defendants, in an action for equitable relief, tried to the court.   Affirmed.

*E. K. Brown* and *Martin & Jesseph*, for appellant.

*Hovey & Hale*, for respondents.

FULLERTON, J.—James Watson died on October 16, 1913, leaving an estate consisting of real and personal property of the estimated value of some $50,000.   By a nonintervention will, he divided his estate among certain relatives, bequeathing also to an Indian woman, known as Margaret Watson, with whom he had lived for about thirty-three years, $1,000 in cash and a yearly allowance of $250 during her life. After the expiration of the period for filing claims, and when the estate was ready for distribution, the Indian woman, claiming as the widow of Watson, began an action seeking to have set aside to her, as the wife of the decedent, one-half

[1]Reported in 161 Pac. 375.

of all the real estate and personal property above referred to. She also asked that certain other property be assigned to her in her separate right, that the executors named in the non-intervention will be restrained from further proceeding with the control and management of such property, and that her title thereto be quieted. The defendants, by their answer, in addition to denials and an affirmative defense, set up a cross-complaint to the effect that the plaintiff's claim constituted a cloud on their title, and prayed that their title be quieted. The action was tried to the court sitting without a jury, and resulted in a judgment against the plaintiff, in which the title to the property of the estate was quieted in the executors. The plaintiff appeals.

The first error assigned is the refusal of the court to grant the demand made for a jury trial. The appellant contends that the action is one at law, that it presents an issue of fact for the recovery of money and specific real and personal property, which, under Rem. 1915 Code, § 314, is required to be tried by jury, unless a jury be waived. But plaintiff's right to the real and personal property in dispute is altogether dependent upon the primary issue as to whether or not she was the legal wife of the decedent. That relationship is alleged and denied, and is the very foundation of the action. The chief question being that of marriage, it was one properly for the court to determine. But more than this, the action is one of equitable cognizance as disclosed by the pleadings. Both appellant and respondents demand relief that can only be awarded in an action of equitable cognizance. A part of appellant's relief demanded involved an accounting as to the proceeds and increase of her property, covering a period of more than thirty years' time, and the plaintiff also sets up that the accumulation of property claimed by the executors was partly due to her personal efforts as well as to her advancement of funds, and that the executors are dissipating the property of the estate and will continue such

acts unless restrained.    This clearly presents an action of equitable cognizance.

We think the principal question involved is the same as that presented in *Enos v. Hamblen*, 79 Wash. 583, 140 Pac. 675, where we held that an action seeking to establish plaintiff's right as widow of a decedent was an equitable one.    We there said:

"The estate in this case is in the possession of the executor. The property in his possession is a trust fund, first, for the payment of the costs and expenses of administration, and second, to be distributed to the persons lawfully entitled thereto. A person claiming to be an heir or a community owner of the estate must establish his claim at some place in the proceedings, and when established, they are entitled to the distribution which the law authorizes.    In order to establish a right to the estate as distributee, the proceeding must necessarily, we think, be an equitable one and falls within the provisions of Rem. & Bal. Code, § 315 (P. C. 81 § 207), above quoted."

The appellant seeks to distinguish the case cited from this one, on the ground that the former was an application in the probate proceedings to establish claimant's status as wife of decedent in order to fix her right to distribution, while the present case is an independent action to determine appellant's rights in a decedent's estate which, by reason of the nonintervention will, has never been in the custody of the court.    But the object in both actions, the *Enos* case and this one, was to fix plaintiff's status as the wife of decedent as the basis of any claim of right to share in the estate, and this we hold is an action of equitable cognizance.

From the evidence deduced at the trial, the court made findings of fact to the effect that the decedent, James Watson, came to the Territory of Washington about the year 1876, and took up his residence in what is now the county of Kittitas; that he resided within a few miles of what is now the city of Ellensburg, from the summer of 1877 until about the year 1909, when he went to Okanogan county, where he lived most of the time until his death on October 16, 1913; that decedent

left a will in which appellant was granted a legacy of one thousand dollars and an annuity of two hundred and fifty dollars, and further legacies to the other respondents in this action other than the defendant James Ramsay, one of the executors; that the will was admitted to probate in Kittitas county, Washington, on the 11th day of November, 1913, and the year's notice to creditors given, the time for presenting claims expiring about November 13, 1914; that the inheritance tax was paid to the state and that the executors are now handling the property of the estate, the will being what is known as a nonintervention will under the laws of this state.

It further found that, at the time of Watson's death, all his property was situate in Kittitas county, except some horses and cattle of the value of about six hundred dollars, which he had with him in Okanogan county; that his property, in addition to the horses and cattle, consisted of $6,000 deposited in a bank, one hundred and sixty acres of land acquired by him by purchase in the year 1877, one hundred and sixty acres which he acquired under the homestead laws of the United States, a forty-acre tract which he purchased in 1900, one hundred fifty-nine shares of stock in the Ellensburg Water Company, and five shares in the Bull Ditch Company, all of which is needed to procure water for the irrigation of the land. The court also found that, in about the year 1885, the decedent commenced living with the appellant, and from that time on kept her at his house, where she performed the ordinary duties of a housekeeper; that there never was any ceremonial marriage between decedent and appellant; that they were never married, but that decedent was what was known as a squaw man, and was so reputed in the community where he and appellant resided; that decedent, at the time appellant took up residence with him, was possessed of a considerable quantity of horses, a portion of which was afterwards traded for cattle; that all of the property at present belonging to decedent's estate consists of property which the decedent owned prior to beginning cohabitation with appellant, or is

the proceeds or natural enhancement in value of such property, save a bequest of $2,000 which decedent received from the estate of a deceased brother; that, at the time appellant went to live with decedent, she was the owner of about thirty Indian ponies and some twenty head of cattle, which she always kept separate from the property of decedent, each of them employing separate brands for their own live stock; that there is no satisfactory proof that decedent ever received any portion of the proceeds of the sale of any property belonging to appellant; that the executors of decedent's estate have paid appellant the sum of $325 on account of sums due her under the will, and have at all times been ready and willing to pay over the sums provided for appellant under the will.

As conclusions of law, the court found that appellant was not the wife of decedent, James Watson, and that, even if there had been a marriage between them, all of the property now comprised in the decedent's estate is the separate property of such decedent, and its disposition governed by his will; that appellant is not entitled to recover; that respondents are entitled to a decree quieting title to all the property belonging to the estate of James Watson, deceased, and that appellant has no interest therein.

The appellant excepts to the foregoing findings of fact as being contrary to the evidence introduced, and to the conclusions of law as not supported by the evidence, the findings in the case, nor the law applicable thereto. It would subserve no useful purpose to review the evidence. We have carefully examined it and are satisfied that it supports the findings by a strong preponderance. It seems, also, too clear to require argument that the findings support the conclusions of law and the decree founded thereon.

The judgment should be affirmed, and it is so ordered.

MORRIS, C. J., MOUNT, CHADWICK, and ELLIS, JJ., concur.